### DAVIS et al. v. JONES.†

(Court of Civil Appeals of Texas. Amarillo. April 6, 1912. Rehearing Denied May 18, 1912.)

1. JUDGMENT (§ 444*)—OPENING OR VACATING—FALSE TESTIMONY.

Where a judgment for defendant in an action to enforce a judgment lien was procured by perjured testimony that the lands sought to be subjected were the property of the defendant, and not held in trust for the judgment debtor, the judgment creditor within a reasonable time after the discovery of the falsity of such testimony may properly sue all persons not innocent purchasers to set aside the judgment of cancellation and to foreclose the lien.

[Ed. Note.—For other cases, see Judgment Cent. Dig. § 839; Dec. Dig. § 444.*]

2. JUDGMENT (§ 793*)—LIEN—EVIDENCE.

In an action to enforce the lien of a judgment, evidence *held* to sustain a finding that the rights claimed by the defendants in the land were derived through the judgment debtor rather than through another.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1383–1387; Dec. Dig. § 793.*]

3. JUDGMENT (§ 793*) — LIEN — EVIDENCE — PLEADINGS IN OTHER ACTIONS.

A petition in an action in which certain lands were parceled and divided amongst the plaintiffs therein, who were made defendants in an action to subject the lands to a judgment lien, was properly admitted in the latter action to show that the land was not the property of one who held it in trust for such parties, and that a judgment in another earlier action against such trustee, refusing to subject the land to the lien as the land of such parties, should be canceled.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1383–1387; Dec. Dig. § 793.*]

4. APPEAL AND ERROR (§ 232*)—RESERVATION OF GROUNDS — OBJECTIONS TO EVIDENCE.

A party on appeal cannot urge an objection to the admissibility of testimony which was not urged to its admission or consideration below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1351, 1368, 1426, 1430, 1431; Dec. Dig. § 232.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

**5. JUDGMENT (§ 793*)—LIEN—ACTION TO EN-FORCE—EVIDENCE.**

Where, in an action to enforce the lien of a judgment on land, the rights of all the parties were obtained as heirs, legatees, or distributees of the judgment debtor or his wife, and not under a person who held the land sought to be subjected to the lien as trustee for them, a pleading in a former action by the debtor's wife against such trustee to parcel and divide the lands in controversy was not inadmissible as rendered in an action to which some of the parties to the present suit were strangers.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1383–1387; Dec. Dig. § 793.*]

Appeal from District Court, Hardeman County; S. P. Huff, Judge.

Action by Thomas Jones against Mary B. Davis and others. From a judgment for plaintiff, defendants appeal. Affirmed.

A. M. John and Decker & Clarke, all of Quanah, for appellants. Jos. H. Aynesworth, of Childress, for appellee.

GRAHAM, C. J. This is an appeal by defendants below from a judgment rendered by the district court of Hardeman county, in favor of plaintiff below, foreclosing a lien on certain lands in Hardeman county claimed by appellants.

The record shows that appellee herein filed suit in the district court of Hardeman county on December 8, 1910, against appellants to foreclose an alleged lien on the property hereinafter described for the payment of a judgment which appellee had recovered years before against one H. C. Davis, deceased, alleging substantially the recovery by appellee of the judgment against H. C. Davis and R. E. Richmond on July 3, 1901, in the county court of Childress county, Tex., in cause No. 61 on the civil docket of said court for the sum of $464.60; allegation was made of due and legal filing, recording, and indexing of an abstract of said judgment in Hardeman county about July 3, 1901, whereby a lien was fixed on the lands in controversy; allegation was also made of the issuance of an execution on said judgment on July 22, 1901, which was duly and legally returned, thereby keeping said judgment alive under the law for 10 years from that date. Allegation was then made of the death of H. C. Davis and that all the defendants held and claimed as heirs, devisees, or distributees of H. C. Davis, who it is alleged actually owned the lands at the time of the abstracting of said judgment and at all times thereafter.

That on October 8, 1904, in cause No. 627, styled Thomas Jones v. Minnie Humphreys, on the docket of the district court of Hardeman county, judgment was rendered canceling and annulling plaintiff's alleged judgment lien; allegation being made that said last-mentioned judgment was based on false and perjured testimony of H. C. Davis, his wife, Mary B. Davis, and Minnie Humphreys, to the effect that the lands in controversy were owned exclusively by Minnie Humphreys, and H. C. Davis did not own them or any interest in them when the abstract of judgment was filed, recorded, and indexed, or at any time thereafter; allegation is then made that in truth and in fact the real, equitable and beneficial ownership of the said lands had at all times been in H. C. Davis as his separate property or in H. C. Davis and his wife, Mary B. Davis, as their community property. Allegation is then made that thereafter H. C. Davis having died intestate, in cause No. 764 on the docket of the district court of Hardeman county, styled Mary B. Davis v. Willis A. Jones et al. (said Willis A. Jones having in the meantime married Minnie Humphreys), judgment was rendered parceling and dividing the lands in controversy among defendants in this suit, and that all such rights as were awarded all the parties defendant herein in said last-mentioned judgment were as heirs, legatees, and distributors under H. C. Davis, then deceased. Allegation is then made of the indebtedness of said H. C. Davis to appellee on the judgment in said cause No. 61 at the time of the death of H. C. Davis, the absence of any administration on his estate, and allegation is made that Davis died seised and possessed of the beneficial interest in the lands, and allegation is made of possession of the lands by appellants as heirs, legatees, and distributors under said H. C. Davis, deceased. A want of any legal division of said lands among defendants was then alleged, and a lien was alleged on all the lands to secure the payment of plaintiff's debt. Prayer is then made to cancel and set aside the judgment rendered in cause No. 627, and for a foreclosure of appellee's lien on all the said lands as against each and all of the appellants.

Appellants answered by a general demurrer and special exceptions, a general denial, a special denial that they or either of them held or claimed under H. C. Davis, and then alleged that they held and claimed under Minnie Humphreys, pleaded the statute of limitation of four years, and appellants Clarke and Decker pleaded that they were innocent purchasers of the interest claimed by them in said lands.

By supplemental petition filed on March 9, 1911, appellee alleged in substance, in avoidance of the statutes of limitations pleaded by appellants, that through the fraud of appellants and those through whom they claimed, the facts entitling appellee to have the judgment in cause No. 627 set aside, had been concealed from him until said facts were finally developed and disclosed in the disposition of cause No. 764 herein mentioned, and that through no fault of his he failed to make such discovery earlier. By trial

amendment, appellants pleaded the judgment in cause No. 627 in estoppel and in bar of appellee's alleged right to a judgment lien on the land.

The cause was tried below before the court without the intervention of a jury, and the following judgment was rendered:

"On this the 10th day of March, 1911, came on this cause for trial, and came all the parties plaintiff and defendants and in open court announce ready for trial, and the court, having heard and determined the general demurrers of the said several defendants, finds the law against said demurrers, and the same are in all things overruled; and thereupon the cause was duly called for trial, and all matters of fact as well as of law being submitted to the court, and the court having heard the pleadings of the several parties and the evidence adduced thereunder in support thereof, considers that the plaintiff, Thos. Jones, ought to recover on his said pleas, and that he ought to have a foreclosure of his lien upon the following lands situate in Hardeman county, Tex., all of section No. 240, block H, Waco & Northwestern Railway Company survey, except the southeast one-fourth of said survey, and the south one-half of the northeast one-fourth of said survey, which said debt is here found to be in the sum of $515.

"It is therefore ordered, considered, adjudged, and decreed by the court that the plaintiff, Thos. Jones, has a lien upon all of said section No. 240, block H, Waco & Northwestern Railway Company surveys in Hardeman county, Tex., except all of the southeast one-fourth thereof, and the south one-half of the northeast one-fourth thereof; the said lien being the judgment lien and now amounting to the said sum of $515, and the same is now here in all things foreclosed against the said several defendants, Mary B. Davis, Lucile Davis, Tina Davis, Nance Davis, Minnie Davis, D. E. Decker, J. A. Clarke, B. Whittington, and husband, E. E. Whittington, M. M. Franklin, and husband, B. H. Franklin, and H. Roy Davis, and the same is declared to be a superior and prior lien to any right, title, or interest in and to said lands held by any of said defendants aforesaid, and that the said judgment herein shall draw interest at the rate of 10 per cent. per annum from this date, that he have his writ of execution and order of sale commanding the sheriff of this Hardeman county, Tex., to seize upon and sell said lands as is provided by law, and apply the same to the payment of said judgment and in satisfaction of said lien aforesaid, but that, in the event that said lands shall not bring enough to pay off and discharge said judgment lien, then and in that event no other or further execution shall issue against the said defendants; they not being personally liable.

"It is the further order, judgment, and decree of the court that the plaintiff, Thos. Jones, has a lien upon the aforesaid property by virtue of being a creditor of the estate of H. C. Davis, now deceased, in the sum of $515, the said sum being the judgment aforesaid, and as such creditor he has a lien upon all of the section No. 240, block H, Waco & Northwestern Railway Company, Hardeman county, Tex., except the southeast one-fourth and the south one-half of the northeast one-fourth, and that the defendants hereto hold as follows: D. E. Decker and J. A. Clarke each one-sixth thereof, Mary B. Davis one-third thereof, and that Lucile Davis, Tina Davis, Nance Davis, Minnie Davis, B. Whittington, M. M. Franklin, and H. Roy Davis each one twenty-first thereof, and the same is in all things hereby foreclosed against the respective interests of the said defendants herein, and the clerk of this court is directed to issue his order of sale as is in all things authorized by law, commanding the sheriff of this Hardeman county, Tex., to sell said lands and to make the said above-mentioned sum of money thereout so that each defendant shall pay only his proportionate part of the aforesaid judgment as his interest therein bears to the whole amount of the estate, together with such costs in that behalf incurred, but that, in case said sum of money shall not be made out of the said estate, then no execution shall issue for any deficiency thereon.

"It is further ordered that the plaintiff have and recover of and from the defendants his costs in this behalf expended, and that the said defendants D. E. Decker and J. A. Clarke each take nothing by their plea of innocent purchaser as against the plaintiff Thos. Jones, and that such interest be held inferior to the lien of said Thos. Jones, and it is so ordered.

"That said several defendants then and there in open court excepted to the judgment of the court in overruling the general demurrers, and to the order and judgment of the court in foreclosing the said liens and judgment, and gave notice of appeal to the Court of Civil Appeals of the Second Supreme Judicial District of Texas, sitting at Ft. Worth, Tex., and is hereby given 30 days from and after the adjournment of this court in which to prepare and file bills of exceptions and statement of facts."

From which all of the defendants below have prosecuted a joint appeal to this court.

There are both statement of facts and findings of fact and conclusions of law of the trial court on file, in this cause, but the record fails to show that the findings of fact and conclusions of law filed by the trial court was prepared and filed at the request or instance of either appellant or appellee.

As the disposition we shall make of this appeal will be largely based on the findings of fact and conclusions of law filed by the trial court, we copy same herein, as follows:

### Conclusions of Law and Fact.

"A jury being waived and the cause being submitted to the court, I find as follows: In cause No. 91 of the county court of Childress county, Tex., Thos. Jones, plaintiff herein, recovered judgment in the sum of $464.60 against H. C. Davis and R. E. Richmond, together with interest thereon from the date thereof, to wit, July 2, 1901, at the rate of 10 per cent. per annum and all costs of suit.

"(2) I find that Thos. Jones did on the 3d day of July, 1901, procure an abstract of said judgment and filed the same with the clerk of the county court, Hardeman county, Tex., and that said clerk did on said date file and record the same as provided by law in volume 1, page 296, abstract of judgment records of said Hardeman county, Tex., and at the same time indexed the same showing the name of the plaintiff and each of the defendants in the direct and reverse as required by law so as to entitle him to a lien upon the property of defendants.

"(3) I find that on the 22d day of July, 1901, the plaintiff, Thos. Jones, in cause No. 91 in the county court of Childress county, Tex., caused an execution to be issued as required by law, and that it was duly returned into court indorsed "no property found," and that afterwards on the 12th day of September, 1901, an alias execution was issued to Hardeman county, Tex., and was by the sheriff of said county executed by making a levy.

"(4) I find that said judgment in cause No. 91, county court of Childress county, Tex., has a balance still due of $515, being the amounts of the principal, interests, and costs of said suit as shown in the abstract of judgment and the executions containing certified copies of the cost bills, less credit of $291.95 of date June 4, 1904.

"(5) I find that Mary B. Davis is the wife of H. C. Davis, deceased; that Lucile Davis, Tina Davis, Nance Davis, Minnie Davis, B. Whittington, M. M. Franklin, and H. Roy Davis are the children of H. C. Davis, deceased, and said Mary B., his wife; that E. E. Whittington is the husband of B. Whittington; and that B. H. Franklin is the husband of M. M. Franklin; and that, as such wife, Mary B. Davis was entitled to one-half of the lands and the children the other half, the same being the community property of H. C. Davis, deceased, and his wife, Mary B. Davis. That D. E. Decker and J. A. Clarke are practicing attorneys of this court, and by representing plaintiff in cause No. 764 became entitled to one-third of the lands recovered therein.

"(6) I find that on the 16th day of October, 1909, Mary B. Davis, for herself and as next friend for her children above named, filed in cause No. 764 of the district court of Hardeman county, Tex., styled Mary B. Davis v. Willis A. Jones et al., her first amended original petition and in which she alleged that on the 23d day of December, 1907, Minnie Humphreys Jones, wife of Willis A. Jones, made, executed, and delivered to her four certain promissory notes, each in the sum of $1,500, due and payable on or before June 1, 1908, December 1, 1908, June 1, 1909, and December 1, 1909, and bearing interest from date at the rate of 10 per cent. per annum and 10 per cent. for attorney's fees, etc., that at said date the said Mary B. Davis made, executed, and delivered her certain warranty deed to the said Minnie Humphreys, wherein and whereby she conveyed to the said Minnie Humphreys all of section No. 240, block H, Waco & Northwestern Railway Company survey, in Hardeman county, Tex. That part of the purchase money and consideration for said deed was the four promissory notes above mentioned, and the same was specially stipulated in said deed, and a vendor's lien was retained therein. She then alleged a default in the payment of the note due June 1, 1908, and her election to declare them due, the employment of attorneys to bring the suit, and asked for general relief, etc. She alleged that, since the execution of said notes, the defendant Minnie Humphreys had intermarried with her codefendant Willis A. Jones.

"In the second count of her petition, Mary B. Davis sued in trespass to try title alleging the title to be in her, the said Mary B. Davis.

"In a third count to her petition, the said Mary B. Davis alleged that on the 5th day of March, 1901, the land in controversy was conveyed by John Scarborough to H. C. Davis, the husband of plaintiff therein, upon a consideration of $3,500; the sum of $1,750 being paid in cash by the said H. C. Davis, and the said H. C. Davis executing his two certain promissory notes, each in the sum of $875 for the balance of said purchase money; that said money was derived by the said H. C. Davis selling lands belonging to said H. C. Davis in the state of Virginia; that said Davis, after selling the property in Virginia, paid his debts and brought with him to Texas the sum of about $5,000 in cash. That she objected to said Davis selling the lands in Virginia because he was addicted to drinking, and that he assured her that he would have plenty of money with which to pay his debts in Virginia, and that he would fix and secure the investments in Texas lands so that they could not be taken from her for the debts and liabilities of the said H. C. Davis, and that she, relying upon said promises and assurances, finally consented to the execution of the deed to said home place in Virginia, but that she afterwards learned that the lands purchased by her said husband were not safe and secure from the claims and demands of the creditors of her said husband, and that he might incumber and transfer the same with-

-out her consent and her joining in a conveyance of the same; that upon their arrival in ·Texas the said H. C. Davis had bought ·the lands in controversy and above mentioned, and had taken the deed to the same in his name, and had executed the notes above referred to as a part of the purchase money, ·and that her husband continued to drink and get on frequent and protracted sprees, and that she, fearing that he would squander what little property they had left, sought ·advice about what course to pursue with reference to protecting herself and children ·against the improvidence of her husband, ·and was advised that it was the best to get the property out of the name of her husband, and was advised· that it was best to ·have said property transferred to some one ·else. That accordingly ·it was on the 30th day of March, 1901, transferred to her and the defendant Minnie Humphreys. That he (H. C. Davis) continued to drink, and that she was further advised that it would be better to further transfer the property out ·of her name, and it was accordingly transferred on the 18th day of October, 1902, to the defendant Minnie Humphreys; that the ·conveyance was made to her in trust, for the use and benefit of the plaintiff Mary B. ·Davis; and that said Minnie Humphreys so ·understood it and accepted it and continued thereafter for many years to· so treat, and ·especially during the lifetime of the said H. C. Davis; and that there was no consideration for said transfer of said property· ·other than the trust created and accepted by said defendant Minnie Humphreys. That ·the sole object in said transfer was to place it where said H. C. Davis could not sell, in- ·cumber, or otherwise dispose of or squander ·said property, that the original purchase money, to wit, $1,750, paid on said property ·was paid by said H. C. Davis and was his ·money, and that no part thereof was paid ·by said defendant Minnie Humphreys.

"Plaintiff says that thereafter, and after ·her husband's death, she called upon the ·said Minnie Humphreys to reconvey said ·property to her, which she declined to do. 'That recognizing the facts, and realizing 'that the beneficial ownership was in the ·plaintiff, the defendant and the plaintiff aft- ·er a fair, free, and full discussion of the ·matter, and to adjust their claims, entered into an agreement whereby said Minnie Humphreys agreed to give this plaintiff a lien upon the said section No. 240 in the sum of $6,000 as above mentioned, being the notes above referred to. That plaintiff had offered said Minnie Humphreys a deed, and ·she .had ·refused it, and it was tendered in- ·to court, and a specific performance of the contract was prayed establishing a lien, etc. She ·further prays in the alternative that, if ·the said contract could not be specifically enforced, then and in that event she plead ·that .the .property hereinbefore described was conveyed to the said Minnie Humphreys for the use and benefit of herself, Mary B. Davis, and that she holds the legal title thereto merely as trustee for this plaintiff, the beneficial interest in said property being in this plaintiff; that the consideration recited in said deed from this plaintiff and H. C. Davis to the said Minnie Humphreys was in fact never paid, and was not'intended to be paid, save and except in the capacity of trustee and under such terms agreed to and known between such parties; and that the cash consideration expressed in the deed from John Scarborough to H. C. Davis, which was the cash payment on said lands, to wit, $1,750, was in fact and in truth the money of said H. C. Davis and this plaintiff; that in making the transfers to said Minnie Humphreys, she knew and well understood the purposes of said conveyances, and that she received·the same in trust for the use and benefit of this plaintiff. She further alleged that Minnie Humphreys had lived with the plaintiff and her said husband, H. C. Davis, in Virginia, and well knew all their business affairs, and that her husband had promised to invest the balance remaining after their debts in the state of Virginia, and so arrange it that said investments would be secure for her and not capable of being taken from her for any debts or liabilities of the said H. C. Davis; that the land before mentioned was purchased and paid for as before stated, the cash payments being made from the proceeds of lands in Virginia, and the title taken in the name of said H. C. Davis, but that afterwards they transferred it as aforesaid to said Minnie Humphreys, which said conveyance was in trust for plaintiff, etc., and said Minnie Humphreys, recognizing the said trust, should account for the fruits derived therefrom to this plaintiff.

"Plaintiff further alleged that neither she nor her said husband ever parted with the equitable and beneficial ownership of said property, but that the same still remains in this plaintiff, and that she is entitled to have the legal title vested in her by reason of the facts hereinbefore alleged, with prayer for judgment for title and possession, restitution, for costs and general relief.

"(7) I further find that on the 20th day of October, 1909, the plaintiffs and the defendants entered into an agreement respecting said lands involved in said suit, to wit, section No. 240, block H, Waco & Northwestern Railway Company, Hardeman county, Tex., and being the lands involved in this suit, and agreed that judgment might be rendered thereon by the court in said cause No. 764, and which agreement provided that the said plaintiffs do have and recover the title to all of said section No. 240 except the southeast one-fourth and the south one-half of the northeast one-fourth, that the defendants do have and recover the title and pos-

session of the said southeast one-fourth and the south one-half of the northeast one-fourth of said section. That each party, plaintiff and defendant, should assume certain indebtedness due against said lands, that said amounts of indebtedness are about equal in amounts, and that a lien was reserved to each party, plaintiff and defendant, for the punctual performance and payment of the amounts assumed by the parties respectively, and that upon performance either party on demand was to have deeds to the respective parts to them awarded; that D. E. Decker and J. A. Clarke were given by said judgment one-third of the lands recovered by them for the plaintiffs, and assumed one-third of the indebtedness due against the lands awarded to the plaintiffs, and was entitled to deed upon the payment by them of one-third of the indebtedness, and that plaintiffs should hold under the laws of descent and distribution; that in accordance with said agreement, and all parties being in court, judgment was rendered in conformity therewith, and the judgment became and is a final judgment of record in volume 3, page 480 et seq., of the minutes of this court. I further find that said judgment was an agreed judgment in settlement of the suit then pending between the parties in regard to their respective interest in and to said tract of lands.

"(8) I further find that in cause No. 627, in which Thos. Jones was plaintiff and Minnie Humphreys was defendant, a trial was had in this court on the ——— day of ———, 1904, and that, upon said trial of said cause No. 627, the judgment lien so asserted by the said Thos. Jones against the said Minnie Humphreys as against the lands in this suit was canceled, annulled, and held for naught, and that said judgment is of record in volume 3, page 208 et seq., minutes of this court.

"(9) I further find that plaintiff, Thos. Jones, did not know of the secret trust of the said Minnie Humphreys, and did not know that the lands involved in this suit were the property of H. C. Davis and wife until the determination of said cause No. 764 in October 1909, and that he could not by reasonable diligence have found out that the said Mary B. Davis claimed any interest therein sooner than he did.

"(10) I find that Decker & Clarke are not purchasers in good faith without notice as to the plaintiff's judgment lien, and were in possession of facts if pursued with ordinary diligence would have led to a knowledge of the true condition of the title to the land and the plaintiff's lien thereon, if in fact they did not have actual notice thereof.

"I conclude as a matter of law that, by the filing of the abstract of judgment aforesaid, the said Thos. Jones thereby secured and fixed a judgment lien upon the lands now held by the defendant in this suit.

"Second. I further conclude as a matter of law that the said plaintiff, Thos. Jones, being a creditor of the estate of the said H. C. Davis, deceased, in the sum of $515, has a lien against the said lands described and mentioned in plaintiff's petition, being the lands recovered by plaintiffs in cause No. 764 of this court.

"Third. I further conclude as a matter of law that the said Mary B. Davis and her codefendants, not being a party to the cause No. 627, in which Thos. Jones, plaintiff herein, was plaintiff, and Minnie Humphreys was defendant, could not plead the same as an estoppel against the said plaintiff in this suit, not being a privy in estate.

"Fourth. I further conclude that as a matter of law, if I be mistaken in the third conclusion of law, and the said Mary B. Davis and her codefendants were entitled to plead the same as an estoppel against plaintiff herein, that she and each of them were estopped to plead said judgment in bar by reason of the allegations in her pleadings in cause No. 764 and the judgment rendered therein.

"Fifth. I further conclude as a matter of law that the plaintiff's rights herein are not personal against the defendants, and that he is only entitled to a judgment foreclosing his lien upon the lands as described in his petition, and being the lands mentioned in judgment in cause No. 764, and that he is entitled to his costs in this behalf.

"Witness my hand at Quanah, Tex., this the 14th day of March, A. D. 1911.

"S. P. Huff, Judge 46th Judicial District of Texas."

We have carefully examined the pleadings of appellee in this cause as found in the transcript and are of the opinion that they are amply sufficient to support the findings of fact and conclusions of law filed by the trial court, as well as the final judgment appealed from.

Appellants submit the case in this court on the following assignments of error:

"Appellants' first assignment of error (fifth assignment in transcript, p. 24). The court erred in rendering judgment in favor of plaintiff and in failing to render judgment in favor of defendants in that the undisputed evidence shows: (1) That the judgment lien asserted by plaintiff against the property involved in this suit had been canceled as to said property by the judgment of a court of competent jurisdiction in an action between plaintiff herein and Minnie Humphreys; (2) that defendants herein hold the property against which plaintiff asserts said lien herein as the vendees of the said Minnie Humphreys, and that therefore plaintiff is estopped by the aforesaid judgment from asserting said lien upon the property described in his petition, as he has herein attempted to do."

"Appellants' second assignment of error

(fourth assignment in transcript, p. 24). The court erred in rendering judgment for plaintiff and in failing to render judgment for defendants."

"Appellants' third assignment of error (sixth assignment in transcript, p. 24). The court erred in admitting in evidence the petition of plaintiffs (defendants herein) in cause No. 764, district court of Hardeman county, Tex., over the objections of defendants, as stated in their bill of exceptions No. 1, herein."

[1] Under appellants' first assignment but one proposition is submitted, as follows: "Appellee having in a court of competent jurisdiction attempted to assert and have foreclosed his judgment lien against the property involved in this action against Minnie Humphreys, and having his right to such lien and foreclosure denied in a final judgment in favor of said Minnie Humphreys canceling and annulling said lien as to the property involved in this action, has had his day in court and is estopped and barred to again attempt in this or any other action to so assert said lien against said property as against the said Minnie Humphreys or her privies in estate." If the allegations of fact in appellee's pleadings are true, and for the purpose of disposing of the proposition under this assignment we must take them as being true, they are amply sufficient to support the judgment. There is no complaint made under this assignment as to the sufficiency of the findings of fact or of the evidence to support the judgment.

The record tends to show that the judgment rendered in cause No. 627 was procured on false allegations and evidence participated in by H. C. Davis, Mary B. Davis, and Minnie Humphreys, and that appellee herein, without any fault on his part, failed so to learn until shortly before the filing of this suit; this suit itself being in the nature of a suit to set aside said judgment rendered in cause No. 627, and to foreclose the lien which had been canceled in said judgment.

If it be a fact that the judgment in cause No. 627 was procured on false testimony, given by H. C. Davis and Minnie Humphreys as alleged in appellee's pleadings, and as the record in this case tends to show, and it be a further fact that appellee, without fault on his part, failed to discover such fact until within a reasonable time before the filing of this suit, this proceeding as we view the law can be maintained, and a foreclosure of the lien canceled in cause No. 627 can be had as against the lands on which the recording of the abstract of judgment had fixed a lien as against all persons not innocent purchasers for value, without notice. McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357, and authorities there cited; Avocato v. Dell'Ara, 84 S. W. 443.

[2] As we view the record in this case, there is ample evidence warranting the conclusion that all such rights as appellants claimed were and are derived through H. C. Davis and not through Minnie Humphreys, as the record fails to show how Minnie Humphreys acquired any interest in the lands except on the theory set out in plaintiff's petition in cause No. 764. For the reasons given, appellants' first assignment will be overruled.

[3] Under appellants' second assignment but one proposition is submitted as follows: "There being no evidence that appellants held title as heirs, etc., of H. C. Davis, deceased, save an abandoned pleading in a suit to which appellee was not a party; and the evidence being undisputed that appellants held title under Minnie Humphreys, the evidence was insufficient to support the judgment of the court, and the judgment was contrary to the evidence." What we have said in disposing of appellant's first assignment of error might suffice for a disposition of this one. We call attention, however, to the fact that the statement of facts shows that Thomas Jones testified on the trial of this cause that he heard the testimony of Mrs. Davis during the trial of cause No. 764, and that she testified in that suit in effect that the lands were the property of Minnie Humphreys.

We find nothing in the record tending to show that the pleading of plaintiff in cause No. 764 was an abandoned pleading as stated in appellants' proposition above copied. On the contrary, we think the record shows that the judgment rendered in that cause was necessarily based upon the pleading of plaintiff therein, and as that pleading under the view we take of the law was admissible in evidence, and was in fact found by the trial court to be true, we think it amply sufficient in connection with the evidence of Thomas Jones, above mentioned, to sustain the conclusion that appellants claim such rights as they have in the lands in controversy under H. C. Davis and not under Minnie Humphreys, and appellants' second assignment will therefore be overruled. McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357.

[4] Under appellant's third assignment but one proposition is submitted as follows: "An abandoned pleading in a suit to which one is a total stranger, and on which no judgment is rendered, is inadmissible in evidence in a suit between the stranger and the party who made the pleading as an estoppel or as evidence of facts admitted in the pleading." The bill of exception on which this assignment is based shows that, when the pleading mentioned was offered in evidence, its admission was objected to in the following language: "To which testimony the defendant then and there duly and legally objected for the reason that the same shows to have been filed long after the suit was tried with reference to the ownership of the land, and would be an afterwards discovered fact, and because it is after the time of any judgment

lien was filed and recorded and because the same is irrelevant and immaterial and not connected with any matter in this suit, because it sets up a question of fact that was denied by parties at interest, and in that allegation these parties were entitled to recover upon issues not embraced in any issue in the Jones suit."

A comparison of the objections made to the introduction of the evidence as copied above and the proposition submitted under this assignment as copied above shows that appellant seeks to now urge an objection to the admission or consideration of said testimony which was not raised in the trial court, and, as we view the law, we are not at liberty to pass upon the question raised, as appellants are confined in this court as to the admission of testimony to the questions that were ruled upon by the trial court. We have concluded, however, to dispose of the assignment upon its merits, even as presented.

[5] In so far as the bill of exception asserts that the pleading was not admissible as evidence because it showed to have been filed long after the suit was tried in cause No. 764, the record does not bear out the assertion as the statement of facts shows that the judgment was rendered in cause No. 764 on October 20, 1909, and it also shows that the pleading introduced in evidence was filed on October 16, 1909, four days before the judgment was rendered in that cause; in so far as the objection was urged to the introduction of said pleading as being irrelevant and immaterial, we think the pleading was admissible upon more than one issue raised by the pleading in this case; in so far as the objection to the introduction of said evidence was based on the assertion that the allegations of fact in said pleading were denied by other parties at interest in this case, we answer that the record in this case fails to show this to be true.

Even if the objections urged in the trial court were properly before this court for disposition, we think the objections were not well taken, and for these reasons we think the trial court did not err in admitting the pleading complained of. If it be conceded that the objections to the introduction of the pleading urged in the trial court were sufficient to warrant us in considering the proposition submitted under this assignment in answer to these contentions made in said proposition as before stated herein, we think the record fails to show that the pleading introduced in evidence was an abandoned pleading in cause No. 764, or that the record in this case shows that any party to this suit was a stranger to the proceedings had in cause No. 764, as we think the record sustains the conclusion that both appellants and appellee in this case hold as heirs, legatees, or distributees under H. C. Davis or under Mary B. Davis, and that they do not hold under Minnie Humphreys, as contended by appellants herein. For the reasons stated, appellants' third assignment of error will be overruled.

After a careful investigation of the entire record, we fail to find any error warranting a reversal of the judgemnt rendered by the trial court, and therefore conclude that said judgment should be in all things affirmed, and it is so ordered.